IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ISAAC MORENO,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>STATE OF HAWAIʻI, FAMILY COURT OF THE FIRST CIRCUIT, *et al.*,<br><br>　　　　Defendants. | Civil No. 25-00476 MWJS-KJM<br><br>ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## INTRODUCTION

Pro se Plaintiff Isaac Moreno brings this action against the State of Hawaiʻi District and Family Court, three named judges, and several unidentified court personnel, alleging a violation of his rights based on adverse rulings in an ongoing District Court action. After conducting the screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A, the court concludes that Moreno does not meet the requirements to proceed in forma pauperis (IFP). For the following reasons, the court denies his IFP application and dismisses his complaint with leave to amend.

## DISCUSSION

A.　**Determination of IFP Status**

A litigant who cannot afford a federal court's filing fees may seek to proceed in forma pauperis by submitting an affidavit showing their inability to pay. *See* 28 U.S.C.

§ 1915(a).  While there is no specific formula to determine whether an IFP applicant can afford the fees, an IFP affidavit must at least allege "that the affiant cannot pay the court costs and still afford the necessities of life," and it must do so "with some particularity, definiteness and certainty."  *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).

Here, Moreno's IFP affidavit indicates that, since 2012, he has been employed with the U.S. Department of Defense at Joint Base Pearl Harbor and earns an individual monthly income of $8,150.  Dkt. No. 2, at PageID.6-7.  His spouse has been employed at Tripler Army Medical Center since 2012 and earns a gross monthly income of $13,960.  *Id*.  His assets include:  a USAA checking account containing $53,100, of which $2,100 belongs to him and $51,000 of which belongs to his spouse; a USAA savings account containing $100,600, of which $600 belongs to him and $100,000 of which belongs to his spouse; and a Vanguard account which includes $500,000 in assets belonging to his spouse.  *Id*.  Their assets also include a home valued at $911,000 and other real estate valued at $794,000.  *Id*. at PageID.8.  Moreno owns two cars:  a 2013 Tesla Model S valued at $10,000, and a 2019 Tesla Model S valued at $27,000.  *Id*.  The affidavit also lists two other assets, valued at $280,000 and $45,000 respectively.  *Id*.

As to expenses, Moreno notes that he and his spouse have two children.  *Id*.  Moreno describes the household's monthly expenses as including rent and property taxes, food, transportation, insurance, healthcare costs, and credit card payments.  He

states that his portion of these expenses amounts to $7,480, while his spouse pays $3,430. *Id*. at PageID.9.

Moreno also states, however, that at the time of submitting his IFP affidavit on November 7, he was furloughed and did not earn an income. *Id.* at PageID.10. Additionally, although Moreno indicates that his spouse earns $13,960 in monthly income, he states that marital assets, including the Vanguard account, are "not accessible" to him. *Id.* at PageID.7, 10. Finally, Moreno indicates that although his affidavit includes other assets, such assets are "encumbered by over $1.1 million in debt." *Id.* at PageID.10.

Courts typically assess IFP status based on household income, but in cases where "one spouse's funds may simply not be available to the other spouse," the court may look solely to the applicant's income and assets. *Escobedo*, 787 F.3d at 1236. Crediting Moreno's assertion that his spouse's income and assets are not available to him, his own reported income and financial resources are still inconsistent with IFP eligibility: accounting for his two children, Moreno's annual income exceeds the $30,650 poverty threshold for a three-person household in the state of Hawaiʻi. *See* Annual Update of the HHS Poverty Guidelines, 90 Fed. Reg. 5917 (Jan. 17, 2025). His affidavit reflects a monthly income of $8,150 ($97,800 annually) prior to the furlough, and personal assets—including checking and savings account balances—that exceed the filing fee by a substantial margin. Dkt. No. 2, at PageID.6-7. Moreno further anticipates paying

3

approximately $10,000 in attorney's fees in connection with this action, suggesting that he has access to funds beyond what is needed to cover the court's filing fee. *See id.* at Page.ID.10. Based on these representations, the filing fee would not pose a hindrance to Moreno's ability to afford "the necessities of life." *Escobedo*, 787 F.3d at 1234. Accordingly, the court finds that Moreno has not shown that he is entitled to proceed in forma pauperis under 28 U.S.C. § 1915. The court therefore DENIES his IFP application.

**B.     Mandatory Screening of Moreno's Complaint**

When a litigant asks to proceed without prepayment of fees, the court is statutorily required to screen the complaint for other deficiencies. *See* 28 U.S.C. § 1915(e)(2). Under that statute, the court must dismiss claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit. *See id.* at § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc). Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A involves the same standard as is used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). In screening a complaint, the court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010).

In the present case, even when liberally construing Moreno's pro se complaint, the court finds dismissal appropriate: the complaint does not state a claim upon which relief can be granted, seeks relief that lies outside this court's jurisdiction, and asserts

claims that are barred by both Eleventh Amendment sovereign immunity and judicial immunity.

    1.  In evaluating whether a complaint states a valid claim for screening purposes, courts generally apply the pleading standards in Rule 8 of the Federal Rules of Civil Procedure.  *See Zixiang Li v. Kerry*, 710 F.3d 995, 998-99 (9th Cir. 2013) (explaining that "Rule 12(b)(6) is read in conjunction with Rule 8(a)").  Under Rule 8, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (cleaned up).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a particular defendant for specific misconduct.  *See id.*

    Moreno's complaint indicates he is party to several cases before the Hawaiʻi District and Family Court, *see* Dkt. No. 1, at PageID.5, and he challenges a series of rulings issued by the District and Family Court for the First Circuit in connection with his ongoing family court proceedings.  *See* Dkt. No. 1, at PageID.1.  His complaint lists various adverse state-court determinations, which he alleges were violations of his due process or equal protection rights, as well as his rights under the Americans with Disabilities Act (ADA).  *Id.* at PageID.2-3.  For example, Moreno alleges that a December

5

2024 "contradictory ruling," in which the court found no domestic abuse, left active a temporary restraining order (TRO), and mandated therapy, was a violation of due process and "punitive action without evidence." *Id.* at PageID.2. Moreno's complaint also includes allegations about his spouse's actions, such as her alleged fabrication of a TRO in 2024, an alleged transfer of cash, and an alleged assault against Moreno. *Id.* Moreno challenges the court's handling of these incidents, for example by claiming that the court "ignored" the assault and "instead issued a 5-year [protective order] against [Moreno]." *Id.* Additionally, Moreno challenges two different state court rulings related to "abusive litigation" (an order to show cause in August 2025 and the grant of a motion imposing a pre-filing restriction in November 2025), which he alleges were retaliatory and violated his "right to file motions" and access the courts. Dkt. No. 1, at PageID.2-3.

Even affording the complaint the liberal construction due to pro se litigants, Moreno does not articulate *how* any specific state-court decision resulted in the constitutional or statutory violations he asserts. Nor does he allege facts showing that any named defendant personally engaged in unlawful conduct. Rather than pleading a cognizable cause of action, the complaint lists various family court rulings—custody decisions, evidentiary determinations, and the resolution of a recusal motion—and then assigns a constitutional or statutory "violation" to each. *See id.* But "[t]hreadbare

6

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim.  *Iqbal*, 556 U.S. at 678.

In addition, the relief Moreno seeks is not relief this court may provide.  His complaint effectively asks this court to review and overturn rulings made in his ongoing state family court proceedings, to "nullify" protective and filing-restriction orders, and to exercise federal oversight over the state judiciary.  Dkt. No. 1, at PageID.3-4.  But federal district courts generally do not have authority to review or revise state court decisions and "may not serve as appellate tribunals to review errors allegedly committed by state courts."  *MacKay v. Pfeil*, 827 F.2d 540, 543 (9th Cir. 1987).  This limitation carries particular weight in the family law context, where federal courts may not revisit or modify state child custody determinations.  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (cleaned up)).  To the extent Moreno seeks review of the state court's decisions—whether those proceedings are ongoing or have concluded—this court is "unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation."  *Moore v. Sims*, 442 U.S. 415, 435 (1979).

2. Even if Moreno's complaint stated claims upon which relief could be granted, suits against the Hawaiʻi District and Family Court are barred by the Eleventh

7

Amendment, which "generally prevents a state and state government actors from being sued in federal court without the state's consent." *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019). The state's sovereign immunity under the Eleventh Amendment extends to state courts and judges acting in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 967 (9th Cir. 2010). It applies regardless of the form of relief sought and bars suits seeking declaratory, injunctive, or other retrospective relief against the state and its instrumentalities. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016); *Papasan v. Allain*, 478 U.S. 265, 276 (1986). Here, because a suit against a state court is, for Eleventh Amendment purposes, a suit against the state itself, claims against the Hawaiʻi District and Family Court are barred. *See Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) (concluding that a suit against a state court "is a suit against the State, barred by the Eleventh Amendment").

Further, no exception to sovereign immunity applies. Hawaiʻi has not waived its immunity, and Congress has not abrogated state sovereign immunity for the types of claims Moreno asserts. Nor does *Ex parte Young*, 209 U.S. 123 (1908), provide a path forward. That doctrine permits suits against state officials in their official capacities only for prospective relief directed at halting an ongoing violation of federal law—not for obtaining review, reversal, or invalidation of past state-court decisions. *See Koala*, 931 F.3d at 895. Here, Moreno seeks "federal oversight," "investigation," and

8

"nullification" of state-court orders, Dkt. No. 1, at PageID.3-4, forms of relief that would operate directly upon state court proceedings. In such circumstances, the state is the real party in interest, and *Ex parte Young* does not apply. *See Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988).

3. Moreno's claims against the three named District and Family Court judges, Judge Montalbano, Judge Brown, and Judge Vidinha, are independently barred by absolute judicial immunity. Judges are immune from suits seeking damages, declaratory relief, or injunctive relief for acts performed in their judicial capacity. *See Moore v. Brewster*, 96 F.3d 1240, 1243–44 (9th Cir. 1996); *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987). To determine whether an act is judicial in nature, courts consider whether (1) the act is a normal judicial function; (2) the events occurred in chambers or in court; (3) the controversy concerned a case pending before the judge; and (4) the events arose directly from the judge's official role. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001).

Here, all of Moreno's allegations against Judges Montalbano, Brown, and Vidinha arise from rulings they issued in the course of the underlying family court proceedings. Moreno challenges, for example, Judge Montalbano's credibility ruling, the reversal of a TRO, the issuance of an order to show cause for "abusive litigation," and the denial of a recusal motion; Judge Brown's and Judge Vidinha's issuance and enforcement of protective orders; and Judge Vidinha's ruling imposing pre-filing

9

restrictions.  *See* Dkt. No. 1, at PageID.2-3.  Each of these actions is a paradigmatic judicial function undertaken in the course of the adjudication of a matter before the court.  And just as it applies to judges, judicial immunity "extend[s]. . . to certain others who perform functions closely associated with the judicial process."  *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985).  To the extent Moreno seeks relief against unnamed court personnel, such claims, too, may be barred by judicial immunity if they relate to acts taken in their official capacities.

Because Moreno's allegations do not state a plausible basis for relief, and his claims are barred by sovereign immunity and judicial immunity, the complaint must be DISMISSED.

### C.     Moreno is Granted Leave to Amend the Complaint

If a complaint does not survive screening, the court must nonetheless grant leave to amend if it appears that the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  As a general rule, leave to amend should be freely given when justice so requires.  FED. R. CIV. P. 15(a)(2).  *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); *see also Tripati v. First Nat'l Bank & Tr.*, 821 F.2d 1368, 1370 (9th Cir. 1987).  This principle applies with particular force to pro se litigants proceeding in forma pauperis, who must be given the chance to amend unless it is

"absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Tripati*, 821 F.2d at 1370 (cleaned up).

Here, the court recognizes that Moreno is proceeding pro se, and that certain defects in the complaint may be curable with more specific allegations. Moreno indicates that he has not yet identified all individuals involved in the alleged conduct, and it is conceivable that claims against properly named defendants may not be barred by the Eleventh Amendment or judicial immunity. Accordingly, the court will permit Moreno to file an amended complaint identifying the individuals who allegedly caused the harm at issue.

But Moreno may not add new claims without prior leave of court, and any amended pleading must take into account the Eleventh Amendment and judicial immunity limitations discussed above. Moreno should also clearly explain how each defendant participated in the alleged misconduct, as Rule 8 requires more than general assertions of wrongdoing. In addition, any amended complaint must stand on its own; it cannot incorporate prior filings by reference and must allege facts showing a plausible entitlement to relief. Failure to timely file an amended complaint that complies with these requirements may result in dismissal of this action without further opportunity to amend. If Moreno chooses to proceed by filing a new IFP application alongside an amended complaint, the new complaint will again be subject to screening under 28 U.S.C. § 1915(e)(2).

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's application to proceed without prepayment of fees or costs and DISMISSES his complaint with leave to amend.

If Plaintiff elects to file an amended complaint, he must comply with the following requirements:

    (1)    The deadline to file an amended complaint is December 19, 2025;

    (2)    The amended complaint should be titled "First Amended Complaint";

    (3)    Plaintiff must cure the deficiencies identified above.

Plaintiff is cautioned that this action will be automatically dismissed if he fails to either (a) timely file an amended pleading that conforms with this Order and concurrently file a new IFP Application, or (b) timely submit the filing fee. Until Plaintiff files an amended pleading and either files a new IFP Application or pays the filing fee, he should not file any other documents in this action.

IT IS SO ORDERED.

DATED: November 21, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 25-00476 MWJS-WRP; *Moreno v. State of Hawaiʻi, Family Court of the First Circuit* et al.; ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND